## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

CHAD KISTER,
        Plaintiff,                    Civil Action 2:13-cv-00071
v.                                   JUDGE EDMUND A. SARGUS, JR.
                                         Magistrate Judge Terence P. Kemp

APPALACHIAN BEHAVIORAL
HEALTH CARE, et al.,
        Defendants.

### OPINION AND ORDER

Plaintiff Chad Kister brings this action against Defendants Appalachian Behavioral Healthcare Center ("ABHC"), Jane Krason, Mary Beth Holler, Dr. Hamill, Kim Castor, and Becky Williard.[1] He alleges claims under 42 U.S.C. § 1983 for the violation of his First, Fourth, Fifth, Eighth, and Fourteenth Amendment rights. Defendants move to dismiss his claims. Doc. 8. For the reasons that follow, Defendants' motion to dismiss is **GRANTED**.

### I. BACKGROUND

Mr. Kister brings suit based on his time in commitment at the ABHC. According to Defendants, the Athens County Court of Common Pleas placed Mr. Kister in the custody of the ABHC after finding him incompetent for trial. Mr. Kister does not refute this—he alleges that he was "locked up" prior to his "trial for charges of allegedly burglarizing his own house." Doc. 3 at 1. Mr. Kister does not allege the dates of his commitment at the ABHC; Defendants explain that Mr. Kister was in the ABHC's custody from December 17, 2012 until February 26, 2013.

Some of Mr. Kister's claims stem from the alleged effects of his confinement on his life outside the ABHC. He alleges that the ABHC denied him internet access for more than a month, which subsequently caused harm to his "hostel booking service." *See id.* at 2–3. He also alleges

---

[1] Mr. Kister also brings his claims against four unnamed John Does and one unnamed Jane Doe. *See* doc. 3 at 1. The claims against the unnamed Defendants are also dismissed for the reasons stated within.

1

that his time away in the ABHC played some role in his house being burglarized. Mr. Kister explains that his time away from his dog caused him mental anguish, and that his time in confinement has harmed his "public speaking and author careers." *Id.* at 3.

The rest of his allegations pertain to his stay on the inside of the ABHC. He alleges generally, for example, that the "treatment and forensic team at ABHC are negligent for failing to promptly recommend [his] evaluation and prompt discharge from the institution." *Id.* at 2. He alleges that his roommate and other ABHC patients have threatened to hurt or kill him; that the ABHC was slow to respond to these issues; that the facility is overcrowded and dirty; and that a member of the housekeeping staff replaced a trash bag in the bathroom while Mr. Kister was using it. *See id.* at 4–5. Mr. Kister further alleges that an ABHC "staff member threatened that [he] would never get out of the institution unless he lies about the fact that he was given a brain implant against his will." *Id.* at 5. "This," according to Mr. Kister, "greatly increases his risk of getting brain cancer." *Id.* He also alleges that "the air quality is atrocious" at the ABHC; and that the ABHC does not use recycled paper products, which "contribute[s] to the deforestation of the planet." *Id.* He also alleges that he "has been forced to use disposable Styrofoam cups, violating both his religious and environmental ethics." *Id.* at 7.

Mr. Kister states that he was denied the ability to call family or friends, as well as the ability to call local media outlets. He also claims that he was denied the ability to walk in the woods, which he must do according to his religion. *See id.* at 8–9. Finally, Mr. Kister alleges that his time in commitment has hindered his fight against climate change, which "threatens the lives of the 6.5 billion people" on earth. Doc. 3 at 10. Mr. Kister used "the Environmental Protection Agency's figure of $6 million per human life for purposes of wrongful death," *id.*; this figure "times 6.5 billion people" has "caus[ed] $39,000 trillion in damages," *id.*

2

Based on the above, Mr. Kister brought the instant action on January 30, 2013. His pleadings demonstrate that he brings the following claims, all under 42 U.S.C. § 1983: (1) "the failure of [ABHC] staff to promptly recommend [his] competency to stand trial," which Mr. Kister claims violated his "civil liberties," doc. 3 at 10; (2) a conspiracy to prevent Mr. Kister's release from the ABHC in violation of his due process rights under the Fourteenth Amendment, *see id.*; (3) the ABHC prevented Mr. Kister from making phone calls or contacting the media in violation of the First Amendment, *see id.*; (4) that "[b]eing locked in ABHC is a form of cruel and unusual punishment," *id.* at 11; (5) that the ABHC prevented him from practicing his religion in violation of the First Amendment; (6) that his confinement led to lost income, which he claims is a taking in violation of the Fifth Amendment; (7) and a violation of his Fourth Amendment rights for, as he alleges, the ABHC tapping his phone calls and changing the bathroom trash while he used the restroom. He brings suit against the ABHC, and against individual Defendants—in both their official and personal capacities—Jane Krason, Mary Beth Holler, Dr. Hamill, Kim Castor, and Becky Williard. Defendants move to dismiss Mr. Kister's claims. Doc. 8.

## II. DISCUSSION

Defendants move to dismiss Mr. Kister's claims on two grounds. One relates to Federal Rule of Civil Procedure 12(b)(1), the other to Rule 12(b)(6).

### A. Rule 12(b)(1)

Defendants assert that Rule 12(b)(1) mandates dismissal for lack of jurisdiction over the claims against the ABHC and against the individual Defendants in their official capacities. In response to a 12(b)(1) challenge, "the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Nichols v. Muskingum Coll.*, 318 F.3d 674, 677 (6th Cir. 2003) (citations

3

omitted) (internal quotation marks omitted). Defendants moving under this Rule have two options—a facial attack of the pleadings, or a factual attack. *See DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004). Defendants here bring a facial attack. In deciding the merits of a facial attack under 12(b)(1), "the court must take the material allegations of the petition as true and construed in the light most favorable to the nonmoving party." *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). Further, courts hold pro se complaints to a less stringent standard than those drafted by attorneys. *See Haines v. Kerner*, 404 U.S. 519, 520–21 (1972).

Defendants specifically argue that the Eleventh Amendment bars all of Mr. Kister's claims, save for those against the individual Defendants in their personal capacities. Mr. Kister does not counter this argument. Defendants' argument can be broken into parts—one applies to the ABHC, and one to the individual Defendants in their official capacities. The Court addresses each in turn.

The Eleventh Amendment provides sovereign immunity for states from certain lawsuits. It reads: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." The Supreme Court has held that this language forbids private lawsuits by citizens against their own state. *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 72–73 (2000); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). For the purposes of this suit, "[sovereign] immunity is far reaching," in that it "bars all suits, whether for injunctive, declaratory or monetary relief." *Thiokol Corp. v. Dep't of Treasury*, 987 F.2d 376, 381 (6th Cir. 1993); *see also Alabama v. Pugh*, 438 U.S. 781, 782 (1977). Further, this immunity applies not just to suits against a "State," but also those against

4

"one of its agencies or departments." *Pennhurst*, 465 U.S. at 100; *see also Mt. Healthy City Sch. Dist. v. Doyle*, 429 U.S. 274, 280 (1977) ("arm of the state").

The question in this case is whether the ABHC qualifies as an "arm of the state" or as a "political subdivision." If the ABHC is an arm of the state, "a federal-law money-damages action . . . against the [ABHC] or its officials may not proceed"; but if the ABHC is "a political subdivision of the State . . . a money-damages action of this sort may proceed in federal court." *Ernst v. Rising*, 427 F.3d 351, 355 (6th Cir. 2005) (en banc). The Supreme Court considers a number of factors in determining this issue:

> (1) the State's potential liability for a judgment against the entity; (2) the language by which state statutes and state courts refer to the entity and the degree of state control and veto power over the entity's actions; (3) whether state or local officials appoint the board members of the entity; and (4) whether the entity's functions fall within the traditional purview of state or local government. In discussing these factors, the Court has emphasized that the first factor—the liability of the State for a judgment—is the foremost factor . . . .

*Id.* at 359 (citations omitted).

Each of these factors falls in the ABHC's favor, meaning that the ABHC is an arm of the state entitled to Eleventh Amendment immunity from Mr. Kister's suit. *See Bremiller v. Cleveland Psychiatric Inst.*, 879 F. Supp. 782, 787 (N.D. Ohio 1995) (reaching a similar conclusion with regard to a state mental-health institution). In their briefing, Defendants refer to the ABHC as a "state[-]created, [-]operated, and [-]financed institution." Doc. 8 at 6. State courts agree, having referred to the ABHC as a "state psychiatric hospital." *See, e.g., State v. Glasser*, No. 11CA11, 2012 WL 2928549, at *2 (Ohio Ct. App. June 27, 2012). State statutes support this position. State law, for example, establishes the Ohio Department of Mental Health, *see* Ohio Rev. Code § 121.02(L); and it requires the "department of mental health and addiction services [to] maintain, operate, manage, and govern state institutions and other services for the

5

care and treatment of mentally ill persons," *id.* § 5119.14(A). Further, the first factor—the "State's potential liability for a judgment against the entity"—"is the foremost factor." *Ernst*, 427 F.3d at 359. On this count, the state treasury has control over the Department of Mental Health's funds. *See, e.g.*, Ohio Rev. Code § 5119.14; *id.* § 5119.54. In short, the ABHC has sovereign immunity under the Eleventh Amendment against Mr. Kister's suit.

Although exceptions to sovereign immunity exist, none of them applies here. As one, the Eleventh Amendment allows a suit for injunctive relief against a state official. *Ex Parte Young*, 209 U.S. 123, 167 (1908). But Mr. Kister has only sued the ABHC and its officials for monetary damages. As another, a state could waive sovereign immunity by consenting to a suit in federal court. *See, e.g., Green v. Mansour*, 474 U.S. 64, 68 (1985). That has not happened here—the State must do so "by the most express language," *Edelman v. Jordan*, 415 U.S. 651, 673 (1974), and no applicable Ohio statute meets that bar, *see Ohio v. Madeline Marie Nursing Homes No. 1 & No. 2*, 694 F.2d 449, 460 (6th Cir. 1982) ("[T]he Ohio Court of Claims Act amounted to a waiver of sovereign immunity only for claims which were themselves determined in the Ohio Court of Claims, but acted as no waiver for actions brought in a federal court").

Mr. Kister also brings claims against the individual Defendants in their official capacities. Doc. 3 at 1. In doing so, he asserts that his "lawsuit is for damages in excess of $150,000." The Eleventh Amendment also bars this exact type of suit. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself."); *Edelman*, 415 U.S. at 664–66. Mr. Kister's claims against both the ABHC and the individual Defendants in their official capacities are thus dismissed.

6

**B. Rule 12(b)(6)**

The individual Defendants, moving in their personal capacities, argue that the remainder of Mr. Kister's claims fail according to Rule 12(b)(6). They specifically argue that Mr. Kister does not allege that they were directly involved in the events at issue. Mr. Kister does not respond to this argument.

Generally, an action will be dismissed pursuant to Rule 12(b)(6) "if on the face of the complaint there is an insurmountable bar to relief." *Gascho v. Global Fitness Holdings, LLC*, 863 F. Supp. 2d 677, 690 (S.D. Ohio 2012). One insurmountable bar to relief is the failure to meet minimum pleading standards. According to Rule 8(a)(2), a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Supreme Court has laid out a "two-pronged approach" for determining facial plausibility. *Iqbal*, 556 U.S. at 679. First— "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* Second—focus on the remaining "well-pleaded factual allegations" to "determine whether they plausibly give rise to an entitlement to relief." *Id.*

Several considerations guide whether a complaint meets the facial-plausibility standard. On one hand, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Further, the factual allegations of a pleading "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. On the other hand, a complaint will not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). When making this

7

determination, a court must construe the claim at issue in the light most favorable to the non-moving party, accept all factual allegations as true, and make reasonable inferences in favor of the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citations omitted).

Guiding precedent obligates Mr. Kister to allege—with some minimum level of specificity—the extent of the individual Defendants' involvement in his case. Mr. Kister must allege, for example, that the individual Defendants "in some . . . way directly participated in" the alleged conduct upon which he bases his claims. *Petty v. Cnty. of Franklin, Ohio*, 478 F.3d 341, 349 (6th Cir. 2007). The Sixth Circuit has also held that "[m]erely listing names in the caption of the complaint and alleging constitutional violations in the body of the complaint is not enough to sustain recovery under § 1983." *Gilmore v. Corrs. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004). In light of this, and given his pleadings, Mr. Kister fails to allege that the individual Defendants had any kind of role in the violation of his constitutional rights. He does, in fact, just what the court in *Gilmore* prohibited: he lists the individual Defendants in the caption of his complaint and then alleges general constitutional violations in the body of his complaint.[2] Without more, the Court cannot "draw the reasonable inference that" any of the Defendants are "liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Mr. Kister thus fails to meet the pleading standards required by Federal Rule of Civil Procedure 8(a)(2). Accordingly, he fails to state a claim upon which relief can be granted, and Defendants' motion to dismiss is granted.

---

[2] Mr. Kister arguably comes close to alleging specifics in his response to Defendants' motion. There, he writes that his "forensic team," which includes the named Defendants, was "informed that [Mr. Kister] ha[d] an automatic booking system for his hostel, and that he could not stop it without internet access." Doc. 10 at 1. He then said this led to a bad review for his hostel business, which has caused a decline in his revenue, which in turn amounts to a taking in violation of the Constitution. *See id.* Mr. Kister does not allege that his lost income was taken for public use. The Takings Clause thus does not apply to this case. *Raceway Park, Inc. v. Ohio*, 356 F.3d 677, 682 (6th Cir. 2004) ("The Takings Clause of the Fifth Amendment . . . provides that private property shall not be taken *for public use* without just compensation." (emphasis added) (citations omitted)).

8

## III. CONCLUSION

For the reasons above, Defendants' motion to dismiss is **GRANTED**. Doc. 8. This case is **DISMISSED** without prejudice. The Clerk is **DIRECTED** to enter **JUDGMENT** accordingly.

**IT IS SO ORDERED.**

1-23-2014
**DATED**

**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**